JOHN BOLGIANO, PURCHASER, *vs.* EBER F. COOKE & WIFE, *et al.*

Trustees appointed by decrees of a Court of Equity, to sell real estate, are agents or instruments of the Court; sales made by them, are transactions between the Court and the purchaser, and as such, are regulated by all the principles of equity applicable to judicial sales.

Before the ratification of a sale made by authority of a Court of Equity, all objections within these limits are open for consideration.  The sale will be set aside upon proof of error, mistake, misunderstanding or misrepresentation as to the terms or manner of sale; it must appear to be in all respects fair and proper, or it cannot receive the sanction of the Court.

Bolgiano *vs.* Cooke, *et al.*

A Court of Equity seils only the interest and estate of the parties to the cause, and the doctrine of *caveat emptor* applies to all such cases.

A purchaser, discovering a defect of title at a proper time, may be relieved from his purchase by asking a rescission of the sale.

Where a Court can see that injury will be inflicted by the ratification of a sale upon a party not in default, the sale should not be ratified.

Pleadings in equity are not framed with the same precision and exactness as at law. Facts are often indirectly alleged or expressed by necessary implication. It is sufficient to present substantially the facts on which Acts of Assembly are predicated, when applying for relief under any of them.

The Acts of 1785, ch. 72; 1816, ch. 154; 1818, ch. 133; 1818, ch. 193; and 1835, ch. 380, being "*in pari materia*," are to be construed together; they import that any interest or estate at law or in equity, in possession or remainder, belonging to infants, held in common or separately, in real estate, may, upon proper application by any of the parties in interest, or *prochein amis* of the infants, upon the Court being satisfied it is for the interest and advantage of the parties, be sold by decree of the Court.

An original petition alleged that W. M., deceased, by his last will, duly proved and recorded, devised certain real estate to trustees, for the benefit of his two nieces, E. and F., for life, with remainder to their children and their heirs; that the trustees named in the will, save two who were discharged, declined serving, and that C. F. M. was appointed trustee in their stead; that the said real estate was unproductive, and it would be beneficial for the infant children and for all parties interested in said devise, that the said real estate should be sold; that F. and her husband, having no children, had conveyed their interest to the petitioner, and a subsequent petition filed in the cause, stated that F. had since died without issue.— HELD:

That these averments substantially embrace all that is required by the Acts of Assembly, and show such an interest in the parties to the proceeding, as authorized the Court to decree the lease or sale of the premises, if they were satisfied it was for the interest and advantage of the infants.

The allegations of a petition being sufficient to give jurisdiction, no demurrer to the petition for that cause could have been sustained. This being the case, neither erroneous action by the Court after the filing of the petition, nor defective proof could effect the question of jurisdiction.

The Act of 1818, ch. 133, makes it discretionary with the Court to act upon the report of the commissioners, or to examine witnesses, and have other testimony. The only indispensable prerequisite is, that "under all the circumstances, the Court shall be satisfied that a sale would be for the interest and advantage of the infant or infants."

Bolgiano *vs.* Cooke, *et al.*

Jurisdiction having been acquired by a Court, it follows, as a legal consequence, that the title of the purchaser to the interest of the party decreed to be sold, cannot be affected by any apparent defect of proof.

The law of the decree must be executed; it is binding upon all parties and privies, unless reversed upon appeal, and the circumstance that some of the defendants were minors, does not make them an exception to the rule.

Where an original decree under which a sale had been made, had been passed ten years, and no appeal had been taken, (no time being reserved to infant defendants within which to appeal in such cases, after coming of age;) although a bill of review or an original bill to set aside the decree for fraud might be filed by adult parties, or by infants after coming of age, a *purchaser* objecting to a sale under such a decree, must state *affirmatively facts* which would justify the apprehension that such a contingency might occur.

It is no objection to the ratification of a sale made under a decree, that a bill was depending at the time of the sale to vacate the decree, where the grounds for impeaching it are not stated, and it does not appear that any order was passed to restrain the proceedings of the trustee.

The office of a trustee's bond is not the benefit or protection of the purchaser, as such; the qualification and sufficiency of the sureties, is matter for the Court or officer authorized to approve, which being done, it is not competent for the purchaser, by exceptions to the ratification of the sale, to review the action of the Court.

The objection to the ratification of a sale, of want of due notice, like all others of fact, must be supported by preponderating evidence sufficient to set aside the report of the trustee, which being made under the sanction of an oath, is entitled to full credit, unless contradicted by conclusive testimony.

APPEAL from the Circuit Court of Baltimore city.

This is an appeal from an order of the Circuit Court of Baltimore city, passed on the 7th of July 1859, overruling exceptions filed by the appellant to the ratification of a sale of certain lands made to him by Eber F. Cooke, one of the appellees, who was also the trustee (appointed in the place of a former trustee, who had retired from the trust) to make sale of said lands in pursuance of the original decree in the case, passed on the 11th of March 1851. The case is stated in the opinion of this Court.

48    v.19

The opinion of the Court below, (KREBS, J.,) sustaining the order appealed from, was as follows:

"In the first and second exceptions of John Bolgiano, purchaser of part of the property reported by the trustee to have been sold by him on the 10th day of May 1859, he objects that the proceedings in the cause are not according to law and equity; that there is no proof of the infancy of the heirs, who are alleged in the bill to be infants; and because it is not proved who are the heirs of the devisee for life, under the will filed in the cause, and that therefore he cannot get a good title to the property which he so purchased.

"The decree under which the trustee made this sale, was passed by the late Baltimore County Court, on the 11th day of March 1851, and must be presumed to have been passed upon due proof of all the facts and circumstances that would have authorized such a decree, and after such proceedings as were required by law to entitle the complainants to it. There was no appeal from the decree, nor was any bill of review, or for rehearing or other proceeding resorted to by any of the parties interested, for the purpose of shewing that it was improperly passed; and it is now too late to impeach it, unless for fraud, or mistake, or surprize, clearly proved. The infants named in the bill were regularly made defendants, and duly summoned, and I am of opinion that it absolutely binds all persons who were parties to the proceeding. *Hunter vs. Hatton,* 4 *Gill,* 115. Whether all the heirs of the devisee for life were made parties, is an enquiry which the exceptant has no right to make. The Court sold nothing but the estate of those who were parties, and were bound by the decree, and there was nothing in the conduct of the trustee, or in the circumstances of the sale, to exempt the purchaser from the operation of the rule, "*caveat emptor,*" applicable to such sales.

"The third exception, which objects to the validity of

the trustee's bond, "because it is not in pursuance of the decree, and because one of the infant defendants is a surety on the bond," is not sustainable as an objection to an order for final ratification. *Dawes vs. Thomas*, 4 *Gill,* 333. The fact that a trustee, under a decree for a sale, made a sale without having given any bond, will not be regarded by the Court as an insuperable objection to a final ratification. *Speed vs. Smith*, 4 *Md. Ch. Dec.*, 410. In cases, however, where the bond is defective, or omitted, the Court will not ratify the sale until a good and sufficient bond has been filed. There being no evidence in the cause to shew that this surety was an infant when he executed this bond, I shall not require a new bond to be given by the trustee, if he shall file satisfactory proof, in the form of affidavits, that the said surety was of full age at the time.

"The objection made by the purchaser, that said plat referred to by the trustee in his report of sales, is missing from the proceedings, can be removed by the trustee filing under his own oath, a duly proved copy of the said plat.

"I must therefore overrule all of the exceptions, except that which shews that the surety in the trustee's bond was an infant; and will pass an order ratifying the sales when a good bond shall appear to have been filed."

By the final order of ratification, the Court below having been satisfied as to the sufficiency of the trustee's bond, all of the said exceptions were overruled.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough and Cochran, J.

*E. Beatty Graff*, for the appellant:

(1.) The decree of the 11th March 1851, and all orders and decrees which passed in this cause, are a *nullity;* and were *illegally, improperly* and *prematurely* passed, as the case was presented for a decree; and the Court passing the

same *had no jurisdiction.* There was no commission, and no testimony was taken. A commission to take testimony should have issued and laid twenty days. *Berrett vs. Oliver,* 7 *G. & J.,* 191. *Richardson vs. Stillinger,* 12 *G. & J.,* 477, *Hughes vs. Jones,* 2 *Md. Ch. Dec.,* 178. *Tomlinson vs. McKaig,* 5 *Gill,* 256. *Williams' case,* 3 *Bland,* 206, 207, 208.

(2.) The Court had no jurisdiction, because the *petition* did not *allege title* or *seisin* in the testator, and there was no proof or evidence before the Court of title or seisin of Wm. Mann, the testator, to the land devised by him. There was no proof that Wm. Mann *died seised* of the land devised by him. The petition stated no equitable case. *Dilley vs. Barnard,* 8 *G. & J.,* 170. *Chaney vs. Tipton,* 11 *G. & J.,* 253, and cases above referred to.

(3.) The petition did not contain the necessary averments to give jurisdiction to the Court of Equity. It did not aver, "The parties interested are unable to agree among themselves" upon a division, or that it was for the interest and advantage of all parties interested "said land should be sold," or "that it will not admit of division," nor was there any *proof* of any of these requirements, which give jurisdiction. 1785, ch. 72, sec. 12. 1816, ch. 154. 1818, ch. 133. *Mewshaw vs. Mewshaw,* 2 *Md. Ch. Dec.,* 12. *Watson vs. Godwin,* 4 *Md. Ch. Dec.,* 25. *Benson vs. Wright,* 4 *Md. Ch. Dec.,* 278.

(4.) Eurydice, one of the devisees of *life,* of one-half of the *"rents, issues and profits"* of the land devised, was not, nor was her alleged husband, a party to this suit, nor was there any *proof* as to whether she sold her life-estate to the rents to Joseph Dows; or as to whether she had or had not children, and what were their ages; or if she was married; or if she were dead or alive; or if the *whole* life-estate to the rents had vested in Euphrasia; all of which facts ought to have been proven by *testimony* to sustain the averments

of the petition, and to give jurisdiction and make the decree valid.

(5.) There was no proof in the cause that Euphrasia was the wife of Eber F. Cook, or that she was alive at the death of Wm. Mann, or that she ever had children, or that Wm. F. Cook and Warren E. Cook were her children, and *were alive* at the time said decree passed, or what their respective ages were when the petition was filed, and whether they were *infants or not;* all of which was necessary to be proven to give jurisdiction, and for the decree to be valid.

(6.) Eurydice and Euphrasia were only entitled to life-estates in the rents and profits of the land devised, and the children of each could only claim or have title to the land devised upon their living to be twenty-one years of age.

(7.) When the petition was filed, and decree passed, Wm. F. Cook and Warren E. Cook were both alleged to be *infants*, and *under twenty-one years of age.* Being such, neither had any title or claim to the land decreed to be sold, and none of the parties in said petition had such an interest or estate in said land as to give the Court jurisdiction.

(8.) If Wm. F. Cooke and Warren E. Cooke, who were alleged to be infants, had died before reaching twenty-one years of age, and there had been no other children of their mother, or any children of Eurydice, who lived to attain twenty-one years of age, the land so devised would then, under the will, have gone to the city of Baltimore.

(9.) Wm. F. Cook and Warren E. Cook, being under twenty-one years of age, had no claim or title under said will, vested, or in reversion or remainder, when the petition was filed; their claim had not vested then; it could only vest upon their having attained twenty-one years of age. Being infants, they could not admit as true the averments of the petition, or be bound by their answer by guardian. All of the averments by the petition must be proven, under

commission to take testimony. It was indispensably necessary to prove *title, death, marriage, birth, infancy, heirship*, &c., before a valid decree could pass; none of which requirements had been proven nor admitted. *Kent vs. Taneyhill*, 6 *G. & J.*, 1. *Boyd vs. Boyd, Id.*, 25. *Harris vs. Harris, Id.* 111. *Richie vs. Bank of U. S.*, 8 *Peters*, 128. *Stewart vs. Duvall*, 7 *G. & J.*, 179. *Joice vs. Taylor*, 6 *G. & J.*, 54. *Briesch vs. McCaulay*, 7 *Gill*, 138.

(10.) As none of the averments of the petition were proven, the decree was void. (See authorities above.)

(11.) The commissioners did not comply with the Act of 1818, ch. 133, or obey the commands set forth in the commission, by reporting whether or not it was "for the interest and advantage of said infants that said land should be sold," but they recommended to the Court to *sell and lease* a part, and not to *sell* a part. This was no compliance with the Act of 1818, ch. 133, or with the commission, both of which should have been strictly followed and construed. 1818, ch. 133.

(12.) The trustee could make no valid sale, unless it was made under a valid decree, passed after a full compliance with the law authorizing a decree to pass. *Glenn & Wootten*, 3 *Md. Ch. Dec.*, 514. *Latrobe vs. Herbert, Id.*, 375.

(13.) The trustee gave no valid bond prior to selling said land, by reason of his surety being one of the infant defendants.

(14.) There is no evidence or proof that the trustee sold the land decreed to be sold.

(15.) The trustee, previous to making sale, did not comply with all the requirements of the decree; he did not advertise the sale once a week, &c., for three successive weeks.

(16.) Advertising the sale "three times a week ten times" and "three times a week," was no compliance with the decree.

(17.) The trustee, in his advertisements, stated that he would sell the property "as laid down and numbered on a plat of the whole property decreed to be sold." He did not sell by said plat, or a copy of it; that plat was the alleged plat made by the commissioners, and has not the lots laid off by numbers, but is divided A, B and C, and was not to be found in the case when the sale was made and reported; the trustee sold by another and a different plat, without its being shown on it which was A, or B, or C, or if he was authorized by decree to sell the part he sold. The decree only authorized B and C to be sold, as laid down on the commissioners' plat; without that plat there was no description of the property in the cause, or anything to show what was decreed to be sold. *Neel vs. Hughes*, 10 *G. & J.*, 7.

(18.) The trustee did not report all of his proceedings relating to said sales; he did not report that he had given bond with surety, that he had advertised for three successive weeks before day of sale, or that the sales had been fairly made.

(19.) The trustee did not, under oath or otherwise, report of the "truth and fairness" of the sales; he reported that the sales had been "made *bona fide.*" This was no compliance with the decree. A sale may be made *bona fide*, and yet fraud or unfair means might be resorted to, to effect a sale, or induce persons to buy.

(20.) The trustee did not, after reporting the sales, comply with the order *nisi* which passed, viz., by advertising the order *nisi* "once in each of three *successive* weeks before 4th of June;" "once a week for three weeks," is no compliance with the order *nisi*.

(21.) The trustee had no authority to dispense complying with, or to depart from the directions given him by the decree and orders of Court. *Dolan & Foy vs. Mayor & C. C. of Balto.*, 4 *Gill*, 394.

(22.) The ratification or rejection of sales made by trustees, depends on the state of the case at the time of sales. The Court erred in allowing the trustee to amend or add to the proceedings, after the sales were made and exceptions were filed, by filing a copy of the commissioners' alleged plat, and *ex-parte* affidavits as to the age of Wm. F. Cook, when he signed trustee's bond. *Tyson vs. Mickel,* 2 *Gill,* 376. *Kauffman vs. Walker,* 9 *Md. Rep.,* 226.

(23.) The Court, by allowing said amendments to be made, thereby admitted there was error in the proceedings in the cause, when the sales were made; and for errors stated and excepted to, said ratification should have been refused.

(24.) Courts of Equity do not presume acts which are illegal to be legal, or that facts or proof which are necessary to give the Court jurisdiction, have been alleged or proven. The Court must be satisfied by admissions of parties competent to admit, or by proof as to the truth of the averments of the bill, before a valid decree can pass.

(25.) The trustee is but the agent of the Court of Equity; sales made by him, are in fact sales made by that Court; Courts of Equity are presumed, and it is the peculiar and special province of such Courts to give relief where there is no remedy at law. The hardship complained of by the appellant, is caused by the error of a Court of Equity in passing a decree prematurely, and when it had no jurisdiction, by which the appellant cannot get a good title for his purchases, and where no proof of title, heirship, infancy, &c., was taken. *Sewall vs. Costigan,* 1 *Md. Ch. Dec.,* 208. *Duvall vs. Speed, Id.,* 229. *Goldsborough vs. Ringgold, Id.,* 239. *Harrison vs. Harrison, Id.,* 331. *Glenn vs. Clapp,* 11 *G. & J.,* 1. *Duffy vs. Calvert,* 6 *Gill,* 487.

(26.) The appellant, as purchaser, only became a party to this cause on 13th May 1859; he had no right when the decree passed to question the legality or regularity of these proceedings by appeal, review, &c. These proceedings are

amicable, and among parties who claim title to the land sold, and to the proceeds of sale; they had no interest or motive to question the legality of the proceedings, or to care if a good title would pass to purchasers; all they want is the proceeds of sales. The appellant's only remedy is by excepting to the ratification of the sales. See cases above referred to.

*J. Howard Griffith*, for the appellee:

It was not competent for the Circuit Court for Baltimore city, and it is not now competent for this Court, on appeal, to consider any but the 3rd and 4th exceptions, referred to in the argument of the appellant; because the appellant seeks, by the 1st and 2nd exceptions, to impeach, invalidate and cause to be set aside the decree of the late Baltimore County Court, after said decree had been enrolled in said Court, and the period of so long a time as eight years had elapsed from the time of its enrolment to the date of the sale made to the appellant, and because said decree cannot be altered or set aside except by a rehearing during the term at which it was passed, or by appeal, or after its enrolment by bill of review. *Hunter vs. Hatton*, 4 *Gill*, 115. *Dawes vs. Thomas, Id.*, 333.

The decree having been acquiesced in and acted upon by all the parties interested, its provisions are binding upon them, and is conclusive of the rights thereby adjudicated. The County Court acting in the premises as a Court of Equity, and in that capacity the especial guardian of the property and rights of infants, it must be presumed that the proofs necessary to constitute the legality of the decree, and all the facts required to inform the mind of the Court as to the propriety of passing it, were regularly obtained by the Court in its proceedings, and that in said proceedings there is nothing to warrant the supposition of fraud, mistake or surprise.

49 v.19

The exceptions of the appellant to the decree of the County Court, seek not only to annul the sale made to him by the trustee, but to vacate the decree *in toto,* because of its illegality, and thus set aside all other sales and leases made by the said trustee and his predecessor to other persons, thereby working great injury to such persons; and it is submitted that this Court has, on appeal from a Court of Equity, the same enlarged powers as those of the Court of original jurisdiction, and among them is that of relieving against the stringent application of a merely technical rule, where that application would work injury, and therefore if the proceedings of said County Court, and the decree thereupon, are in substance equitable and right, and to the interest and advantage of the parties whose rights are passed upon, although there be an omission of any such mere technical formalities, this Court can disregard such omission, and sustain the decree.

The rule, *"caveat emptor,"* operates to prevent the appellant excepting to the sale in this cause, because of any defects in the proceedings of the said County Court, and the validity of the decree thereupon passed, for the reason that said proceedings are a solemn judicial record, and the decree duly enrolled for so great a length of time before said sale to the appellant, that he could have fully informed himself, before he purchased under said sale, of all the causes which he alleges in his exceptions, after said purchase, render the decree premature and invalid, and it is therefore too late to claim exemption from his liability as purchaser, with such legal notice of the title the trustee could make, at the time and for so many years before his purchase, and at all times open to his reference and investigation.

The second exception of the appellant (although these appellees believe, as before stated, it is not within the province of this Court to consider, for the reasons already

given) cannot be sustained by the judgment of this Court, even were it a proper matter for its consideration; because in the proceedings of sale to the appellant, the full age of Wm. F. Cooke is proved under the order of the Circuit Court of Baltimore city, thereby rendering certain the taking effect of the devise after the life estate of Euphrasia F. Cooke, under the will of Wm. Mann, referred to in said exception, without the possibility of the happening of the contingent devise to the city of Baltimore. It remains only to enquire whether the third and fourth exceptions are sustained in the argument of the appellant.

To show that said third exception cannot be sustained, it is answered, that the bond of the trustee is in the penalty and upon the conditions prescribed in the decree of said Baltimore County Court; that it is certified to by the clerk of the Circuit Court of Baltimore city as sufficient, and approved by the Judge of said Court, in conformity with the practice of Courts of Equity in this State, and that said bond was filed by the trustee before making the sale to the appellant, as shown by the record referred to in the argument of the appellant; that the certificate of the clerk of said Court, of its sufficiency, affords sufficient evidence of the competency of the obligors therein to execute it, and the allegation of the appellant in this exception, that Wm. F. Cooke, the surety in said bond, is one of the alleged infant defendants in the original cause in said Baltimore County Court, does not necessarily raise the presumption that said William was an infant at the time he executed the bond, as against the evidence furnished in the clerk's certificate of its sufficiency; but leaves the *onus* upon the appellant, to show that said William was not of full age at the time of signing the bond, which is not shown by the appellant. The affidavit, *ex parte*, allowed by the Circuit Court to be filed by the trustee, to prove the age of said William, as referred to in the appellant's argu-

ment, was merely a matter of favor to the appellant, and not absolutely required by any rule of law imposed upon the appellees by the allegation of the appellant in this exception, and therefore cannot be objected to as an amendment of the trustee's proceedings of sale. The appellees beg leave to refer to the opinion of said Circuit Court, and the authority relied upon to sustain it, in the case of *Speed vs. Smith,* 4 *Md. Ch. Dec.,* 299, that a trustee making a sale without having previously given any bond, is not an insuperable objection to final ratification of sale.

The fourth exception, as gathered from the "other reasons" of the appellant's argument, cannot be sustained; because said reasons are not founded upon the facts shown by the record, and are merely captious objections, to be disallowed by the Court, as within the maxim *"nimia subtilitas in jure reprobatur."* All of the said "other reasons" that it is material the appellees should answer, are as follows:

1st. That there is no evidence or proof that the trustee sold the land decreed to be sold.

2nd. That the trustee did not advertise the sale once a week, &c., for three successive weeks.

3rd. That the trustee did not, under oath or otherwise, report of the truth or fairness of the sale.

4th. That the Court erred in allowing the trustee to amend or add to the proceedings, after sales made and exceptions filed, by filing a copy of the commissioners' alleged plat.

The appellees contend, in answer to the first of these reasons, that on the plat of the commissioners returned to Baltimore County Court, the property decreed to be sold is particularly described as within the boundaries of certain streets, and situated upon certain streets named in said plat, and that the advertisements of sale by the trustee, beginning in date, as shown by the copies returned

with the trustee's report of sales, on the 19th day of April, describe the property as parts of that embraced within the boundaries and situated upon the streets named in said plat. It is not shown in this cause that said plat was missing at any particular time from the proceedings in the cause,—whether at the time of said sales, or at an intervening time between said sales and the filing of the exceptions by the appellant,—and it is merely assumed, without proof, that said plat was missing at the time of the sales. The trustee is not prohibited by the decree from selling portions of either of the divisions, A. B and C, of the property described on said plat, but is only restricted conditionally in sales of division A.

To the second of these reasons, we answer, that by reference to the copies of the advertisements of sale, and the accompanying certificates of publication, it appears that the first insertion of advertisements was on the 19th of April, and that the certificates of publication are dated respectively on the 11th May succeeding, embracing between said dates the period of twenty-one days, or three weeks; that one certificate states the advertisements to have been "three times a week three weeks," and the other states the advertisements to have been "three times a week ten times," which ten times, within said dates of advertisements and certificates, must have necessarily been three times a week for three successive weeks.

To the third of these reasons we answer, that the trustee, under oath, reported that the sales "were made *bona fide*, and for the most money that could be obtained for the same," and that this report is in contemplation of law, that the sales were fairly made, and is a full compliance with the decree; and the appellees here submit that a sale so made, must have been made without "fraud or unfair means being resorted to," as imputed in another point of the appellant's argument, unless the appellant means to

.avow collusion between himself and the trustee to effect an unfair sale, and if so, it is a confession of his own wrong, of which he can take no advantage.

To the fourth of these reasons we answer, that there was no amendment of the proceedings of sale by the trustee's filing a duly authenticated copy of the original plat, alleged to have been missing, at some time; because the copy so filed was to supply a part of the original proceedings in the cause, and not as part of what was essential in the proceedings of sale to the appellant, and missing at the time of said sale. It is therefore contended that the said Circuit Court was not in error in overruling the exceptions of the appellant, and decreeing that the sale to him be finally ratified.

Bowie, C. J., delivered the opinion of this Court:

The appellee, Eber F. Cooke, trustee appointed to sell certain lands decreed to be sold by the original decree in this cause, having reported the sale of lots No. 2 and No. 3, respectively to the appellant, John Bolgiano, an order of ratification *nisi* was passed, to which exceptions being filed and overruled, the sale was finally ratified on the 7th of July 1859, from which order of final ratification this appeal is taken.

The exceptions below, which were four in number, have been subdivided and multiplied into twenty-six points, by the appellant's brief.

As neither time or space will permit us to take up and consider each point *seriatim*, it is believed they may be classified and condensed, without prejudice to the appellant, as follows:

1st. The sales should not be ratified, because the Court below had not jurisdiction, the allegations of the petition being insufficient.

2nd. There was not sufficient proof of the facts alleged.

3rd. The proper parties were not before the Court.

4th. The terms of the decree were not complied with by the trustee.

Trustees appointed by decrees of a Court of Equity, to sell real estate, are agents or instruments of the Court; sales made by them, are transactions between the Court and the purchaser, and as such, are regulated by all the principles of equity applicable to judicial sales. *Glenn vs. Clapp*, 11 *G. & J.*, 1. 1 *Md. Ch. Dec.*, 229, *Duvall vs. Speed*. *Ibid.*, 239, *Goldsborough vs. Ringgold*. 9 *Gill*, 412, *Perren vs. Keithly*.

Before the ratification of a sale made by authority of a Court of Equity, all objections within these limits are open for consideration. The sale will be set aside upon proof of error, mistake, misunderstanding, or misrepresentation as to the terms or manner of sale; it must appear to be in all respects fair and proper, or it cannot receive the sanction of the Court. *Tomlinson vs. McKaig*, 5 *Gill*, 276, 277.

The Court of Chancery, however, sells only the interest and estate of the parties to the cause, and the doctrine of "*caveat emptor*" applies to all such cases. 7 *Md. Rep.*, *Farmers & Planters Bank vs. Martin & Travers*. A purchaser discovering a defect of title, at a proper time, may be relieved from his purchase by asking a rescission of the sale. *Duvall vs. Speed*, 1 *Md. Ch. Dec.*, 299. *Kauffman vs. Walken*, 9 *Md. Rep.*, 229. When a Court can see injustice will be inflicted by the ratification of a sale upon a party not in default, the sale should not be ratified. 12 *G. & J.*, 113, *Penn vs. Brewer*.

With the aid of these authorities, we will proceed to examine the exceptions.

First. The sufficiency of the allegations of the petition to sustain the jurisdiction of the Court below. It is said

that *seisin* or possession of the lands in question by the infant defendants, is not expressly charged.

Pleadings in equity are not framed with the same precision and exactness as at law. Facts are often indirectly alleged or expressed by necessary implication. It is sufficient to present substantially the facts on which the Acts of Assembly are predicated, when applying for relief under any of them. The Act of 1785, ch. 72, sec. 12, speaks of infants having a joint interest or interest in common with any other person or persons, which may be sold by the decree of the Court, "if it shall appear" it will be for the interest and advantage both of the infant and of the other person or persons concerned.

The Act of 1816, ch. 154, and 1818, ch. 193, sec. 7, provide, "where any infants are or shall be possessed of any lands," or hold "equitable titles to real estates," upon its appearing that it will be for the interest and advantage of such infants to sell such lands," they may be sold by order or decree of the Court.

The Act of 1835, ch. 380, extends the power of the Courts to decree sales of infants' estates to all cases of trusts for infants, either for application of rents, profits or income, or in any other form, for their benefit, and to all cases of chattels real, where if the property were freehold, the sale might be decreed, and to all such cases of trusts of and concerning ground in the city of Baltimore.

The Act of 1818, ch. 133, sec. 2, prescribes the mode of proceeding upon the petition by guardians and *prochein ami*, for the sale of infants' real estate, requiring a commission to three freeholders, etc.; provided that the said report shall not be conclusive on the Court, but they may in their discretion examine witnesses and have other testimony, and shall decree only in those cases where, under all circumstances, the Court shall be satisfied that a sale

would be for the interest and advantage of the infant or infants.

These Acts, being "*in pari materia,*" are to be construed together. They import that any interest or estate, at law or in equity, in possession or remainder, belonging to infants, held in common with others, or separately, in real estate, may, upon proper application by any of the parties in interest, or *prochein amis* of the infants, upon the Court being satisfied it is for the interest and advantage of the parties, be sold by decree of the Court. In the proceedings under the Act of 1785, the interest of all parties concerned is the standard; in proceedings under the Acts of 1816, ch. 154, 1818, ch. 193, and 1835, ch. 380, the interest and advantage of the infants is the standard of adjudication. But the interest or estate subject to be sold by the decree of the Court, under the latter Acts, is as unlimited as under the former.

The jurisdiction or power and authority to decree a sale, is conferred by these Acts, if the allegations of the bill or petition are sufficient to bring it within their purview. The original petition in this case alleged that Wm. Mann, late of Baltimore, deceased, by his last will, recorded in the office of Register of Wills, and proved on the 23rd April 1835, devised certain real estate lying in the city of Baltimore, to trustees, for the benefit of his nieces, Euphrasia and Euridyce, for life, with remainder to their children and their heirs; that the trustees named in the will, save two who were discharged, declined serving, and Charles F. Mayer was appointed by the Court trustee in their stead; that the said real estate was unproductive, and it would be beneficial for the infant children and for all parties interested in said devise, that the said real estate should be sold; that Euridyce and her husband had conveyed their interest to the petitioner, Dows, and had no children, and a subsequent petition filed in the cause stated she had died

without issue. The petitioner prayed the said real estate might be leased or sold. Subpœnas were prayed for the infants and trustee, and the former having appeared by guardian, a commission was prayed for to three freeholders, according to the Act of Assembly in such case made and provided.

These averments substantially embrace all that is required by the Acts of Assembly, and show such interests in the parties to the proceeding as authorized the Court to decree the lease or sale of the premises, if they were satisfied it was for the interest and advantage of the infants.

"The true test of jurisdiction is, whether a demurrer will lie to a bill." *Tomlinson vs. McKaig,* 5 *Gill,* 276. The allegations being sufficient to give jurisdiction, no demurrer to the petition for that cause could have been sustained. "If this be so, neither the erroneous action of the Court, after filing the petition, nor defective proof, could affect the question of jurisdiction." *Ibid.*

The Act of 1818, ch. 133, makes it discretionary with the Court to act upon the report of the commissioners, or to examine witnesses and have other testimony. The only indispensable prerequisite is, "under all circumstances the Court shall be satisfied that a sale would be for the interest and advantage of the infant or infants." The decree may be based upon the facts disclosed by the commissioners report alone. It is not essential the conclusions of the commissioners should be adopted by the Court. The facts reported may be such as to satisfy them a sale would be for the interest and advantage of the infants, or *vice versa* when the commissioners arrived at a different conclusion. In this instance, the Court below adopted the report so far as to decree that the estate should be leased, subject to the ratification of the Court, or, if the trustee should deem it most advantageous, that it should be sold.

Jurisdiction having been acquired by the Court, it follows, as a legal consequence, that the title of the purchaser to the interest of the parties decreed to be sold, cannot be affected by any apparent defect of proof. The law of the decree must be executed. It is binding upon all parties and privies, unless reversed upon appeal. The circumstance, that some of the defendants were minors, does not make them an exception to the rule.

The second ground of exception, the want of proof of the infancy, and other allegations in the petition, may be considered as disposed of by the preceding considerations.

The third exception, the want of proper parties, might be regarded as untenable, on the ground that the trustee only professed to sell the interest of the parties to the cause, and that Courts of Equity, in making sales by their agents, do not guaranty title beyond the terms of the decree. But adopting the broader view of some of the cases, that the Courts will not enforce a sale where it appears there would be an injury inflicted, we will inquire whether there is any such apparent injustice in this case? The will of Wm. Mann conveyed the legal estate to trustees, in fee, the rents, issues and profits to be paid to his nieces, Euphrasia and Euridyce, for life, with remainder in fee to their children, and in case of the death of either of the nieces without issue during the life of the other, then the part of such niece so dying, to be held for the use of the survivor of said nieces and her issue, under the same provisions and limitations to which the original share was liable; and in the event of the death of both of said nieces without issue then the whole of said real estate to be held in trust for the uses and purposes of an infirmary for children, etc. Without examining whether the limitation over, after an indefinite failure of issue, and after a limitation in fee, is not too remote, it is sufficient to say that the petition made all the parties in interest, in being, par-

ties to the cause; the tenants for life, the tenants in fee, in remainder, and the trustee, who represented all the interests, vested or contingent, were before the Court.

The original decree under which this sale was made, has been passed ten years. No appeal has been taken, no time is reserved to the infant defendants, by law, to appeal in such cases after coming of age. A bill of review, or an original bill to set aside the decree for fraud, might, it is true, be filed by the parties, adult, or infant, after coming of age, but a purchaser objecting to a sale under such a decree, must state *affirmatively facts* which would justify the apprehension that such a contingency might occur. In *Glenn vs. Clapp*, 11 *G. & J.*, 1, it was held, "it was no objection to the ratification of a sale made under a decree, that a bill was depending at the time of the sale to vacate the decree, where the grounds for impeaching it are not stated, and it does not appear that any order was passed to restrain the proceedings of the trustee."

The appellant in this case no where alleges that the parties in the record are not the true parties in interest; that any other material party in interest has been omitted; that any of the complainants or defendants does not stand in the relation to the deceased, or his property, which they are represented to hold. There is no allegation or proof of claim to the premises by any person not a party to the cause,—nothing to cast a cloud of suspicion on the title.

The last point of objection to be considered, is non-compliance with the terms of the decree prior to the sale. This is two-fold: 1st, the minority of the surety to the bond; 2ndly, want of due notice. The first branch of this objection, if it were sustained by evidence of the fact, (which it is not,) is concluded by the decisions in *Dawes vs. Thomas*, 4 *Gill*, 333, and *Speed vs. Smith*, 4 *Md. Ch. Dec.*, 410. The office of the bond is not for the benefit or protection of the purchaser as such. The qualification and sufficiency of

the sureties, is matter for the Court or officer authorized to approve, which being done, as in this case, it was not competent for the purchaser to review in this manner the action of the Court. The record shows, moreover, that the objection was not well taken, in fact.

The second branch of the last point of objection, want of due notice, is a serious obstacle to the ratification of the sale, if sustained. The Chancellor, in the case of *Glenn & Woolton,* said, although there was no pretence of unfairness, "the failure to give the notice prescribed by the decree, is a fatal objection to the validity of the sale; a departure from the regulations of the decree, in any essential respect, without first attempting to sell in conformity with them, will prevent a ratification, if objection be made." In that case, the objection proceeded from creditors, who thought themselves prejudiced by the sale. There is not the same force in the objection when proceeding from the purchaser, unless he can show he was injured by the want of notice, which is, in fact, the reason of the rule.

This objection, like all others of fact, must be supported by preponderating evidence sufficient to set aside the report of the trustee. That report is made under the sanction of an oath, and entitled to full faith and credit, unless contradicted by conclusive testimony. It states the sale was made in pursuance of the decree, and refers to certain advertisements and certificates therewith filed. There is great obscurity in the language of these certificates. Certificate No. 1 contradicts itself. Bearing date the 11th of May 1859, it states, "the annexed advertisement of trustee's sale," etc., was inserted in "The Sun," etc., "three times a week, ten times." This fairly interpreted, would be equivalent to three times a week for three successive weeks, and once over, which would be a full compliance with the terms of the decree; but the additional words, "first insertion April 21st, 1859," if true, make it impos-

sible, as only twenty days intervened between the first insertion and the date of the certificate. Throwing this certificate out of the question, certificate No. 2 shows that the advertisement was inserted in a daily newspaper printed and published in the city of Baltimore, three times a week three weeks, the first insertion being on the 19th of April, and the day of sale the 10th of May 1859. The decree required notice by advertisement published in at least two daily newspapers of the city of Baltimore, once a week at least, for three successive weeks.

Regarding the evidence in favor of the sufficiency of the notice, as outweighing that against it, taken in conjunction with the trustee's affidavit, and being unable to see how the purchaser could be injured by any irregularity in this respect, we think the exception for want of notice should be overruled.

Concurring with the Court below, in its conclusions on all the exceptions, the order ratifying the sales to John Bolgiano is affirmed, with costs to the appellee in this Court and the Court below.

*Order affirmed, with costs to the Appellee.*