JOHN WALTER and CATHARINE WALTER *vs.* CONRAD RIEHL and HENRY RIEHL.

*Parties to suits in Equity — Building Association Mortgage— Fraudulent Deed.*

Where a bill is filed for the purpose of selling property, *semble* that a prior incumbrancer, whose debt is not due, is not a necessary party. The same rule applies to a building association mortgage, conditioned for the payment of weekly dues, where no default has been made in the condition.

The clause in a decree for the sale of property, that the trustee shall convey to the purchaser, free from all claim of the parties to the cause, "and those claiming by, from or under them, or either of them," is operative only upon the title and interest of the parties to the cause, and those claiming under them by conveyances *pendente lite.*

W., being indebted about $700 for goods purchased, made a deed of certain leasehold property to his father for $1620. Four days after, the father conveyed the same to W's wife for $1625. Some months later W. made a bill of sale of his personal property to his father for $500, who after a short time assigned it to W's wife for $300. All these instruments were duly recorded. Under a bill filed by W's creditors to vacate these conveyances, it was proved that W's father had no visible means wherewith to make the purchases; the evidence of W. and his wife as to her possession of independent means was contradicted in several particulars, and their evidence as to the consideration varied from the amounts stated in the deeds; one uncontradicted witness proved that W. had spoken defiantly of his debt to the complainants, in connection with the conveyances in question. Upon appeal from a decree vacating the conveyances. HELD:

1st. That these circumstances established the charge of fraud.

2nd. That W's father was not a necessary party to the bill.

APPEAL from the Circuit Court of Baltimore City.

The facts and circumstances of the case are set forth in the following extracts from the opinion of the Court below, (PINKNEY, J.)

"In the first place, as to the conveyance by John Walter to his father, Adam Walter. The proof shows that Adam was possessed of no property *within the knowledge of his son*, George Walter, *in whose house he lived;* in answer to the question, if he knew whether his father had any property or not, at the time of the alleged purchase, he replied, that he did not know. 'Did he know whether he was worth as much at $500?' he replied, 'I don't know.' Then John Ulrich testified that he knew Adam Walter; that he came to his house to sell bakers' pells, or wooden shovels, (which appears by the evidence of his sons to have been their father's business,) and that he begged him to buy some of his pells, saying that he was very poor, and had nothing but what he got from their sale to buy clothes and shoes. And no attempt was made to show that this was not true—that Adam Walter was possessed of any visible means with which to buy this property from his son, John Walter, as sworn to.

"Then as to the conveyance from Adam Walter to the wife of John Walter : The conveyance of the house by the father to his son's wife was made *four days* after the deed to him by his son. What motives are assigned for these conveyances? John says he sold the house to his father,'' because he had no money to live on or buy flour.' Why did his father sell to John's wife? Hear John Walter: 'My wife, Catharine Walter, did not know that I sold the house, and did not like to leave the house, and she bought it from Adam Walter with the money that she had got from her first husband.' He saw the money paid, &c.

"And the wife swears that she paid the money to Adam—not, however, $1625, the consideration mentioned in the deed, but $900; she says she got the money from her former husband ; she says the whole amount she had was $1500; that she had kept it all by her, uninvested, ever since her marriage, with the exception of $600, which she had lent to her present husband for a short

time, when he paid it back, &c.; the husband swears to the same story. Yet his brother George says, that John told him he only got $700 or $800, with his wife, and that she told him, about six years ago, that she had about $800 or $900 *in bank.* John Sturmfelz swears that Catharine Walter told him that her first husband left her $600, besides the furniture. And John Lind swears that she told him they were very poor; that her first husband only left her about $600. Catharine says there was no administration upon the estate of her first husband in the Orphans' Court, and that no one knew she had this money, except her husband, John Walter. And there is no proof but her's and her husband's, that she got anything from her first husband, or that she was possessed of any means of her own at the time these transfers were made to her. She swears that she got $1500, and kept it by her in the house. But is it at all probable, and can it be believed that she kept so large a sum of money by her uninvested for so long a time, as she swears she did, from the year 1864, when her first husband died, to the year 1870, when the house was assigned to her by Adam Walter? * * * * * "Take, then, the evidence of William Dietrich, an unimpeached witness; and, under all the circumstances, can any one doubt that these conveyances were made with the intent to defraud the creditors of the defendant, John Walter?"

The following is the evidence of Dietrich, referred to:

"John Walter told me that he had sold his house to his father, and that his father had sold it back to his (John Walter's) wife, Catharine Walter. He said that he owed Mr. Riehl for flour, and that Mr. Riehl had asked him many times for money, but that he had none, and that he would pay Mr. Riehl if he would wait; but that if Mr. Riehl would not wait, he defied him."

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ROBINSON, J.

*John B. Wentz,* for the appellants.

Adam Walter is the grantor in a deed alleged to be fraudulent. He should have been made a party. The Building Association is clearly a party in interest, and should have been made a party, and is a necessary party to do substantial justice. For suppose the complainants should prevail, there would be no legal means of ascertaining. the amount due under this prior incumbrance, and the condition of the property would be vague and undefined and consequently the sale less productive.

If Catharine made payments to reduce the Building Association mortgage from April 11th, 1870, the date of her deed, to Nov. 23rd, 1871, the date of the filing of the bill, she has a right to a credit in the distribution of the proceeds as against the complainants. Besides, if the purchaser under the decree in this case will perform the covenants and conditions in the Building Association mortgage, and merely keep on paying the weekly instalments, he will enjoy the benefit of all the payments made by Catharine without consideration to her and she will not have any remedy either in equity or at law against this injustice. *Lucas, et al. vs. McBlair, et al.,* 12 *G. & J.,* 1; *Hall vs. Maccubbin,* 6 *G. & J.,* 107; *Ward vs. Hollins,* 14 *Md.,* 158; *Lovejoy vs. Irelan,* 17 *Md.,* 525; *Worthington vs. Lee,* 2 *Bland,* 678.

*Philip C. Friese,* for the appellees.

A transaction must not only be for a valuable consideration, but also *bona fide. Glenn vs. Grover,* 3 *Md. Ch. Dec.,* 35; *Worthington vs. Bullitt,* 6 *Md.,* 172.

If the conveyances stated in the bill, from John Walter to Adam Walter, and from Adam Walter to Catharine Walter, were made without consideration, they were fraudulent as respects all the parties to this suit; but Adam Walter, as the mere instrument or agent of the other parties to these conveyances, and not being charged

in the bill as participating in the fraud, is neither a necessary party to this suit, nor has he the interest necessary to make him even a proper party. *Davis vs. Simpson, et al.*, 5 *H. & J.*, 147; *Story's Eq. Pleading*, secs. 228, 229, 231, 232.

Fraud is not to be considered as a single fact, but a conclusion to be drawn from all the circumstances of the case. *Brogden vs. Walker*, 2 *H. & J.*, 292; *Watkins vs. Stockett*, 6 *H. & J.*, 442; *McDowell vs. Goldsmith*, 6 *Md.*, 344; *Foley, adm'r, vs. Bitter*, 34 *Md.*, 646.

MILLER, J., delivered the opinion of the Court.

The decree from which this appeal is taken vacates and annuls two deeds, the one dated April 7th, 1870, from John Walter, conveying to his *father*, Adam Walter, certain leasehold property for the consideration of $1620, and the other dated the 11th of April, 1870, from Adam Walter to Catharine Walter, the *wife* of John Walter, conveying to her the same property for the consideration of $1625, and directs the property to be sold for payment of the debts of John Walter. The bill upon which this decree was passed was filed by the appellees, creditors of John Walter, and charges that these conveyances were fraudulent and void as against them. John Walter and Catharine Walter, his wife, are the only defendants to the suit, and it is objected that a Building Association which holds a prior mortgage on the property, and Adam Walter, should have been made parties.

In many cases it is very difficult to determine who are necessary parties to an equity suit. Upon no subject are the decisions of the most eminent Judges and Chancellors more various, and apparently conflicting. There is no doubt it is the constant aim as well as the just boast of Courts of Equity to do complete justice by settling the rights of all persons interested in the subject matter of the suit so that the performance of the decree may be

perfectly safe to those who are called upon to obey it, and also that future litigation may be prevented ; and where the object of the suit is the sale of property, the endeavor is to prevent its being put in market with a cloud upon the title which can be removed, and to have it offered under circumstances that will, as far as possible, invite a fair and free competition so as to realize to the parties interested its full value and secure to the purchaser a clear title. But still the difficulty remains, is constantly arising in particular cases, and it seems to be admitted that no general rule applicable to all cases can be stated. In *Crook and wife vs. Brown, et al.*, 11 *Md.*, 171, this Court has said "the question must depend in a great measure upon the object as well as the subject of the bill, the relief sought, the privity between the parties and the manner in which their several interests may have arisen, and it is impossible to state a general rule applicable to all cases."

The present suit was instituted by creditors, and its object is to vacate two deeds fraudulent as against them, by means of which property had been transferred from a husband to his wife, and to have that property sold for payment of the husband's debts. The first question presented is this, viz., is this Building Association a prior incumbrancer by way of mortgage, a necessary or indispensable party to the proceeding without whose presence as such no valid decree for a sale can be passed? In the case of *Wylie vs. McMakin*, 2 *Md. Ch. Dec.*, 413, where a bill was filed by a mortgagee for sale of the mortgaged property to pay his debt, it was objected that the holder of a prior mortgage on part of the property was not made a party, and the Chancellor, in referring to this objection, said, "The general rule certainly is, that all incumbrancers shall be made parties, whether prior or subsequent, and though cases may be found where it has been held that a prior mortgagee need not be made a party

because his rights are paramount, it would not be safe, in the face of opposing authorities of the highest respectability, to say that such is the established law of this Court. I am not aware of any case decided by the Court of Appeals of this State, in which it has been held that either a subsequent or prior mortgagee, *whose debt is due*, need not be brought before the Court. If the debt of the absent mortgagee is not due, his presence as a party may perhaps be dispensed with, because you cannot force him to take his money before it is due. He may prefer to leave it out upon the security of the mortgage, and if he does so I do not know there is any authority in this Court to compel him to take it. But if the debt secured by the first mortgage be due, then the desire of the Court in all cases to make a final settlement of the rights of all persons interested, strongly enforces the necessity of bringing him in." The Chancellor, however, in that case, declined to pronounce a definite opinion upon the question, and by a subsequent agreement in the cause, the personal representative of the prior mortgagee was admitted as a party to the suit. In the prior case of *Duvall vs. Speed*, 1 *Md. Ch. Dec.*, 229, where real estate had been sold under a bill filed by a mortgagee, to which a prior judgment creditor *had not been made a party*, the Chancellor held that the purchaser, whilst holding on to his purchase, could not insist upon having his title perfected by the application of the proceeds to the extinguishment of such prior judgment He there points out the difficulty the Court would encounter in attempting to disencumber the title of the liens of those not parties to the suit, and indeed the inability of the Court to do so where such parties have the right to stand out and cling to the property specifically pledged for the payment of their claims. He refers especially to the cases of *Ellicott vs Ellicott*, 6 *G. & J.*, 35, and *Brooke vs. Brooke*, 12 *G. & J.*, 306, and to the doctrine which has been sanctioned and established

by repeated decisions of this Court, that the rule *caveat emptor* applies to purchasers at such sales, and that the trustee sells and the purchaser acquires the title of the parties to the suit, and nothing more. In *Ellicott vs. Ellicott*, where, upon a creditor's bill, the real estate of a deceased person was sold to pay his debts, and a mortgagee was not made a party thereto either as complainant or defendant, it was held by this Court that he was not bound to come in and seek payment of his claim out of the proceeds of sale, but might cling to his specific pledge and hold on until his debt was fully paid, and the same doctrine was reiterated in *Brooke vs. Brooke*, in reference to prior incumbrancers not made parties to a bill by a subsequent mortgagee for sale of the mortgaged premises. In *Barnum's Case*, 31 *Md.*, 450, real estate was devised to be sold *for the purpose of partition*, which was encumbered by two deeds of trust creating a stock debt. This debt had been long overdue, and by the terms of the deeds the stockholders were bound to receive the amounts due them when tendered. It was uncertain how much of this debt remained unextinguished, and it was apparent that some of the parties who might become bidders for the property had means of knowing the precise amount of the unextinguished debt, (which alone was an incumbrance upon the property,) not equally accessible to others. In that case, neither the trustees in the deeds nor the stockholders were made parties, but all those having the right under the deeds to make payment were parties to the suit, and the stockholders, by the terms of their contract, being then bound to receive their money when tendered by these parties, this Court reformed the decree below, which directed the sale to be made subject to these incumbrances, and ordered it to be made free of them, and a sufficient amount of the proceeds to be set apart for the payment of the outstanding stock. This was done in order that none of the parties might stand

on vantage ground as bidders, and that the property should be so placed in market as to invite a fair and free competition among bidders having equal knowledge or means of knowing precisely what they were buying and what purchase money they would have to pay. The peculiar circumstances and obvious justice of that case required the sale to be made free of those incumbrances, and such steps taken respecting the disposition of the proceeds of sale as would produce the same practical result as if the holders of them had been made parties.

From this review of the Maryland decisions on this point it is plain, it is not in all cases like the present, essential to the validity of a decree of sale to make prior incumbrancers parties. Whether in any such case they are necessary and indispensable parties, (though proper to be made so,) is a question still undecided, and the present case does not require us to determine it.

The mortgage is not set out in the record, but it sufficiently appears from the testimony and the reference to it in the deeds to be in the usual form of a Building Association mortgage. By the terms of such instruments no right to sell the mortgaged property exists if the stipulated weekly dues are regularly paid; and it does not appear any such failure had occurred in this case at the time this bill was filed, but the contrary is plainly inferrible from the testimony. The mortgagee was not in a position to enforce a sale, and could only claim prompt payment of *future* weekly dues. In this respect the case resembles that of an ordinary mortgage *where the debt is not due*, and under all the authorities to which we have referred, a prior mortgagee in that situation need not be made a party. We are therefore of opinion, it was not necessary in this case to make this Building Association a party to the bill. Their interests are in no wise affected by the decree. The clause in it that the trustee shall convey the property to the purchaser free from all claim

of the parties to the cause, "and those claiming, by, from or under them, or either of them," cannot affect the interests of one not a party to the suit, and is operative only upon the title and interests of the parties to the cause, and those claiming under them by conveyances *pendente lite.*

In support of the position that Adam Walter is a necessary party, special reference is made to the two cases of *Ward vs. Hollins,* 14 *Md.,* 158, and *Lovejoy vs. Irelan,* 17 *Md.,* 525. In the former of these cases it was held that where the object of a proceeding in Equity is to assail a deed, either for the purpose of having it rectified or vacated all the parties to the instrument are necessary and proper parties to the cause, without whom no valid decree can be passed, and in the latter, where creditors filed a bill to vacate a deed as fraudulent as against them, it was held that the fraudulent grantor was a necessary party as well on account of the fraud charged as because of the title remaining in him for the benefit of creditors. But the present case is unlike either of these. Here *both deeds,* the one *to* and the other *from* Adam Walter are vacated, and he held title for less than five days. No fraud or confederation with the other parties is charged against him. The bill charges that John Walter conspired with his wife Catharine Walter, to cheat and defraud the creditors of the former and attempted to carry out that fraud by means of these false and fraudulent conveyances. The case is very similar to that of *Davis vs. Simpson,* 5 *H. & J.,* 147, where an executor with power to sell, proceeded to have the power executed under an order or decree of Court, and as trustee under such decree, sold and conveyed property to one Campbell, who on the same day re-conveyed it to the trustee, and upon a bill filed by the legatees under the will, the sale and the deeds to and from Campbell, were vacated as fraudulent and void. To this proceeding neither Campbell, nor his

representatives were made parties, and it was held that it was not necessary to make them parties, as he was evidently the mere agent of the trustee, and had bid in the estate for him, and the deeds were executed solely for the purpose of vesting title in the trustee. Adam Walter stands in the same position here. He has no interest in the result of the suit, is not charged with participation in the fraud, and was obviously the mere agent or instrument of the husband and wife, and used by them as such in the consummation of their fraud, the sole object being by means of these two deeds to vest title to the property in the wife. It was not therefore necessary to make Adam Walter a party.

The remaining question is one of fact, viz: is the charge of fraud established by the proof? On this, we have, after a careful examination of the testimony in the record, and consideration of the arguments of counsel, reached the same conclusion as that arrived at by the Circuit Court. The decree appealed from must therefore be affirmed and the cause remanded for its execution.

*Decree affirmed, and*
*cause remanded.*

(Decided 25th June, 1873.)